160 So.2d 132 (1964)
Lillian M. ISENBERG, a minor, by Llewellyn K. Isenberg, her father and next friend, and Llewellyn K. Isenberg, individually, Appellants,
v.
ORTONA PARK RECREATIONAL CENTER, INC., a corporation, Appellee.
No. E-37.
District Court of Appeal of Florida. First District.
January 23, 1964.
Rehearing Denied February 18, 1964.
*133 Parkinson, Sessions & Barry, Daytona Beach, for appellants.
Alfred A. Green, Jr., Daytona Beach, for appellee.
TAYLOR, Associate Judge.
This is an appeal by plaintiffs, a minor child and her father, from a judgment based on a verdict in favor of the defendant in an action for personal injuries sustained by the minor under the following circumstances:
Plaintiff, Lillian M. Isenberg, a minor sixteen years of age, was a business invitee on the premises of the defendant, Ortona Park Recreational Center, Inc., where she went to play tennis, as she had done on several previous occasions. She reached the tennis court by passing through a pro shop which fronts on the tennis court with a series of glass panels and sliding glass doors. The door by which she passed from the pro shop to the tennis court was open as she usually found it.
After playing tennis, and just about sundown, she ran from the tennis court intending to enter the pro shop through the same doorway. But in the meantime the sliding glass door had been closed, and, not observing this, she ran into the door which shattered inflicting upon her rather grievous injuries.
The evidence shows that the door was of plate glass, that it had a narrow aluminum band around it, a pull bar on one side, and (the evidence on this is conflicting) a decal about seven by five inches showing a fish in a colored background.
The evidence also discloses that the interior of the pro shop was lighted as compared with the fading light outside, that the doorway usually remained open when the weather was suitable for tennis and that Miss Isenberg had frequently used the doorway and had never seen the door slid across this opening between the tennis court and the pro shop.
*134 The case was tried in due course, and the trial judge denied a motion on behalf of the defendant for a directed verdict. The jury rendered the following verdict: "We, the jury, find the defendant and the plaintiff guilty of negligence. So say we all." When the verdict was read the judge asked "Any objection to the form of the verdict?" The record shows that there followed an unreported side-bench discussion between the court and counsel for both parties. No objection was made to the form of the verdict, and it was received and a judgment entered in favor of the defendant.
On this appeal, plaintiffs present two questions  (1) the alleged insufficiency of the verdict to support a judgment for defendant and (2) alleged error in giving the jury the following charge:
"I charge you that every person owes himself the duty to see what is plainly to be seen by the ordinary use of his senses, and the law charges a person with having seen what he could have seen, had he looked."
The first question presents no difficulty. The plaintiffs had every opportunity to request the court to require a more specific verdict or to object to the form of the verdict. They did neither. Under these circumstances they should not be heard to complain of the entry of judgment upon the verdict.
Before discussing the second question we should dispose of a cross-assignment of error by the defendant that the court erred in refusing to direct verdict for the defendant based on two theories  (1) that the evidence shows no negligence of the defendant proximately causing the accident and (2) that the evidence clearly discloses contributory negligence on the part of Lillian M. Isenberg. If a verdict should have been directed for the defendant, errors in the charge would not justify a new trial of the case.
The trial judge heard the evidence which described the door, its location and construction and with respect to the prior custom of leaving the door open during use of the tennis courts and the closing of the door under the circumstances of this case. He determined that a jury question was presented on the issues of the defendant's negligence. We agree.
In the light of the charge quoted above, the question of contributory negligence requires a more detailed consideration.
It is elementary that contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary reasonable and prudent person in a similar situation would exercise.
In determining whether a particular individual has been guilty of contributory negligence at a particular time, it is necessary to consider (1) the characteristics of that individual  age, intelligence, experience, knowledge, physical condition, etc.  which would affect his ability to detect dangerous conditions or appreciate the degree of hazards involved in conditions actually observed; (2) the physical facts  the extent to which the particular hazard is noticeable and the degree of alertness to avoid such a hazard reasonably called for by surrounding circumstances; and (3) the action taking place  the incidents of movement, sound and physical activities of the individual charged with contributory negligence and other persons and objects, animate and inanimate.
It is the action of the individual in the light of all the foregoing factors which determines whether or not he has been guilty of contributory negligence.
Where all the facts are undisputed and where only one reasonable deduction may be made, then the question of whether or not a particular individual has been guilty of contributory negligence at a particular time becomes a question of law for the court, but where there is conflict in the evidence as to facts or when the undisputed *135 facts are of such a nature that reasonable men might draw different conclusions then a jury question is presented.
In this case, the trial court denied defendant's motion for a directed verdict, thereby determining that a proper case for the exercise of a jury's judgment was presented. After consideration of all arguments to the contrary, we are convinced that the trial judge was correct in this ruling, and that the case was properly submitted to the jury.
Having reached that conclusion, we find it impossible to reconcile the submission of the case to the jury with the giving of the quoted instruction. The first part of the charge "I charge you that every person owes himself the duty to see what is plainly to be seen by the ordinary use of his senses," is sound. But the last portion "and the law charges a person with having seen what he could have seen, had he looked," is equivalent to charging the jury that every person is at all times charged with the actual knowledge of the presence of every hazard capable of being discovered by the use of sense of vision. We do not think that is the law.
It must be admitted that the opinions of the Supreme Court and those of the District Courts of Appeal are not altogether harmonious when considered as abstract pronouncements of law independent of the facts of the particular cases being considered.
There are statements in a series of cases which are summarized in the language of the District Court of Appeal, Third District, in Kagan v. Eisenstadt, 98 So.2d 370.
"The Supreme Court of Florida has continually adhered to the proposition that requires a person to see what is there to be seen by the ordinary use of his senses, and if it is there to be seen, it is deemed, in law, to have been seen."[1]
On the other hand, the Supreme Court of Florida in the case of the City of Jacksonville v. Stokes, 74 So.2d 278, said:
"If visibility alone settled contributory negligence every case of slipping on a floor or of encountering any stationary object would automatically be a case of non-liability for in all these cases the condition which caused the harm was visible. The question always is whether the plaintiff used due care for his own safety, taking into account all the circumstances, of which the visibility of the object encountered is an important one, but still only one of the circumstances.
"The question is whether one should be aware of the danger. This depends largely upon the likelihood of encountering danger. * * * One need not look for danger unless there is reason to expect it."[2]
*136 While there is definite inconsistency in the language of the opinions, a careful study of the facts of the various cases leads to the conclusion that the real difference is more in the evaluation of the facts being considered than in inconsistency or vacillation in stating the law.
The facts of a case may be such that the court feels impelled to hold as a matter of low that a plaintiff has been guilty of contributory negligence in failing to become conscious of and avoiding a particular hazard.
In a similar, but slightly different, case the court may reach the conclusion that reasonable men could differ on the question of whether or not the hazard was so obvious that a reasonably prudent and cautious man would have necessarily become conscious of the danger and have avoided injury.
In the first case the court determines "as a matter of law" that there was contributory negligence. In the second, the court determines "as a matter of law" that a jury question is presented. But in each case the court is actually evaluating a factual situation.
When we read the apparently conflicting decisions in the light of this principle we reach the conclusion that the different results have been product of the judicial evaluation of different factual situations and that the inconsistencies  and some must be admitted  are more in the evaluation of facts than in stating principles of law.
We think the rule is this: It is the duty of every person to exercise his individual faculties, physical and mental, to detect and avoid hazards to that degree that an ordinary and reasonable person having the same physical and mental abilities would exercise such faculties under the same circumstances, taking into account the time, place, physical surroundings, and activities being pursued. If an individual fails to exercise that degree of care and caution he is guilty of negligence, and if that negligence proximately contributes to an accident he cannot recover. If the circumstances are such that the court can say "as a matter of law" that the plaintiff in a case has failed to exercise the required care and caution for his own safety and thereby contributed proximately to his injury, then no jury question is presented, and the court should direct a verdict for the defendant. On the other hand, if reasonable men could differ as to whether or not the plaintiff has exercised the required degree of care and caution or whether or not such failure contributed proximately to his injury, the case *137 should be submitted to the jury under proper instructions.
In this case we hold that the trial court properly ruled that a jury question was presented and properly submitted the case to the jury, but we are constrained to hold that the quoted charge placed upon the minor plaintiff a higher burden of care for her own safety than the law requires. We have carefully read the entire charge with a view of determining if we can justify application of the harmless error rule, and find that we cannot.
The judgment is reversed and the case remanded for a new trial.
STURGIS, C.J., concurs.
WIGGINTON, J., dissents.
WIGGINTON, Judge (dissenting).
I regret my inability to concur in the conclusion reached by the majority opinion.
The pertinent facts in this case may be briefly summarized as follows. The building in which the glass door was located is the office and pro shop of the recreational center owned and operated by defendant. In addition to swinging doors leading from the pro shop out onto the tennis court area, there are also sliding glass doors. These sliding glass doors are normally left open during shop hours, and provide a means of ingress and egress to and from the building and tennis courts. The doors are occasionally closed during bad weather. The glass door in question is constructed with a mental aluminum strip around its periphery; with an aluminum pull bar about the center of the door as a handle, and a decal three inches square placed on the door at eye level. The evidence is undisputed that the building, equipped as it is with the sliding glass doors, is designed and constructed in accordance with accepted architectural standards in Volusia County.
The plaintiff, a sixteen-year-old girl, had been frequenting the premises of the recreational center for about a month. She had passed through the pro shop out onto the tennis court area on many occasions. In doing so, she had used the doorway in question going to and from the tennis courts. She testified that she knew it was a doorway, at the opening of which was installed a sliding glass door. She further testified that she assumed on occasions the glass door was kept closed. On the day of her injury, she had passed through the doorway onto the tennis courts. During daylight hours late in the afternoon plaintiff returned from the tennis courts with the intention of entering the pro shop through the door which she had used earlier in the afternoon. At that time the door had been closed. Although plaintiff was running or trotting toward the pro shop preparatory to leaving the premises, and although she was looking straight ahead toward the doorway through which she expected to enter the pro shop, she nevertheless failed to see that the sliding glass door had closed the doorway entrance. As a result she ran into the door causing it to break, resulting in the injuries which she suffered.
At the close of the evidence, defendant's motion for a directed verdict was denied. In submitting the case to the jury, the trial judge gave the following quoted instruction which the majority opinion holds to constitute harmful and reversible error, to wit:
"I charge you that every person owes himself the duty to see what is plainly to be seen by the ordinary use of his senses, and the law charges a person with having seen what he could have seen, had he looked."
If this were a slip and fall case where the plaintiff slipped on a foreign substance negligently permitted to accumulate on the floor of a public building under circumstances where plaintiff had no duty to keep his attention fixed on the floor over which he was invited to walk in the building, I *138 would readily concede that the questioned instruction to the jury quoted above would be held to be misleading and erroneous. Such is not the case before us now for consideration. Under the facts in this case defendant was not negligent in placing and maintaining the glass door in question in his building. The evidence clearly establishes without dispute that the door was visible to anyone exercising reasonable care for his own safety.
It is my view that the case of Pettigrew v. Nite-Cap, Inc., (Fla. 1953) 63 So.2d 492, is controlling in this case. In Pettigrew, plaintiff was injured at eleven o'clock at night when she walked into a large plate glass door at the entrance of defendant's restaurant (in the case sub judice, the accident occurred during daylight hours). Plaintiff alleged that the lighting inside the premises and the clear colorless glass door, void of markings, or handles or other visible objects thereon, rendered the door invisible to such an extent that she did not see it, the maintenance of which door constituted negligence which proximately caused her injuries. Plaintiff's testimony showed that the door was of clear glass but that there was a wide metal strip on the top and bottom of the door and a lucite handle located in the usual place on the door with black knobs at the top and bottom to hold it in place. (In the case sub judice, there were metal strips both at the top and bottom and on each side of the door; there was an aluminum pull bar handle as distinguished from the lucite handle in the Pettigrew case; there was a three-inch-square decal on the door which was missing from the door in the Pettigrew case.)
At the close of the plaintiff's case, a verdict was directed for the defendant which on appeal to the Supreme Court was affirmed. In affirming the Supreme Court said:
"The handle, knobs and metal strip on the door were plainly visible and the door was located at the place a door would naturally be expected. It is clear to us that the sole proximate cause of plaintiff's injury was her failure to see that which, by the exercise of reasonable care, she should have seen."
On the strength of the Pettigrew decision, I would be much more inclined to hold that the trial court erred in denying defendant's motion for directed verdict than to hold that it erred in submitting the case to the jury under the instructions shown by this record. Comparing the last quoted ruling of the Supreme Court with the questioned charge in this case, we see that the court charged the jury "that every person owes himself the duty to see what is plainly to be seen by the ordinary use of his senses and the law charges a person with having seen what he could have seen had he looked."
In the later case of Kagan v. Eisenstadt, (Fla.App. 1957) 98 So.2d 370, the Third District Court of Appeal reviewed and affirmed summary judgment entered in favor of a defendant in a personal injury action brought by plaintiff. Plaintiff, a business invitee on defendant's premises, was walking across the floor of a building in the process of construction. He testified that he was not looking at any particular place but was just walking along in a normal manner when his foot caught in a hole in the floor, he lost his balance and fell through an open stairwell. He charged defendant with negligence in failing to provide a safe place in which the plaintiff could walk in the building. In its opinion of affirmance, the District Court of Appeal said:
"The Supreme Court of Florida has continually adhered to the proposition that requires a person to see what is there to be seen by the ordinary use of his senses, and if it is there to be seen, it is deemed, in law, to have been seen. See Earley v. Morrison Cafeteria Co. of Orlando, Fla. 1952, 61 So.2d 477; Pettigrew v. Nite-Cap, Inc., Fla. 1953, 63 So.2d 492."
*139 The charge given by the trial judge in the case sub judice to which objection is now made paraphrases in almost identical form the statement of principle set forth by the Third District Court of Appeal in the Kagan case, supra.
For the reasons and upon the authorities cited above, and under the facts disclosed by the record in this case, I am of the view that the charge of the court to which objection is now made was a proper charge and is free from error. Even if it should be considered technically incorrect, I do not think it can be held to have been misleading when read in connection with the instructions in their entirety. The trial judge charged thoroughly and extensively on the law of negligence and contributory negligence. I do not see how the jury could have misunderstood their function or duty in this case. I think the judgment appealed should be affirmed.
NOTES
[1] Other cases along this line include Earley v. Morrison Cafeteria Co. of Orlando, Fla., 61 So.2d 477 (door mat in entrance to restaurant); Pettigrew v. Nite-Cap, Inc., Fla., 63 So.2d 492 (glass door to restaurant  adult patron); Bowles v. Elkes Pontiac Co., Fla., 63 So.2d 769 (change in floor level in showroom); Kagan v. Eisenstadt, Fla.App., 98 So.2d 370 (open stairwell in partly constructed building); Bashaw v. Dyke, Fla.App., 122 So.2d 507; Chambers v. Southern Wholesale, Inc., Fla., 92 So.2d 188.

This case is cited with approval in many later cases. City of Palatka v. Woods, Fla., 78 So.2d 562 (a defective sidewalk case in which the Supreme Court added "whether her [plaintiff's] conduct in failing to see and avoid the danger contributed to her injury under such circumstances was for the jury to decide."); Smith v. Poston Bridge & Iron, Inc., Fla., 87 So.2d 581, (hazard in construction operations); Bess v. 17545 Collins Avenue, Inc., Fla., 98 So.2d 490 (tripping over pipe crossing walkway in midafternoon  the Supreme Court said "Nor is the fact that in the photographs the condition appears to be an obvious one, or visible, as stated by the trial judge, sufficient as a matter of law to charge the plaintiff with contributory negligence and bar recovery as the trial judge apparently concluded."); McCain v. Bankers Life and Casualty Co., Fla. App., 110 So.2d 718, 68 A.L.R.2d 1194 (a minor of eight years walking into glass door); Purdon v. Cohen, Fla.App., 126 So.2d 575 (customer tripping over tripod in store  District Court of Appeal, Second District); Sneed v. City of West Palm Beach, Fla.App., 128 So.2d 166 (condition of street); Hanson v. Shell's City Inc., Fla.App., 133 So.2d 573 (defective paving in parking lot. The District Court of Appeal, Third District said: "Even if such testimony warrants the conclusion that the area alleged to be defective would have been visible to Mrs. Hanson had she been looking in that direction and not for her car, the question of contributory negligence would still be open."); Food Fair Stores, North Dade, Inc., v. Winkelmann, Fla.App., 135 So.2d 6 (electric cord on floor of store  the District Court of Appeal, Third District said: "The appellate courts of this State have many times held that the mere fact that the injured party could have seen the dangerous condition if he had looked down this would not, in and of itself, constitute a complete bar of his action on the plea of contributory negligence, and if such were the case no such cause would be permitted to go to a jury."); Sandford v. Firestone Tire & Rubber Company, Fla.App., 139 So.2d 916 (oil spot in filling station  District Court of Appeal, Third District.); Quinn v. I.C. Helmly Furniture Company, Fla.App., 141 So.2d 302 (water drained on sidewalk  District Court of Appeal, Third District); Berlin v. Southgate Corp., Fla.App., 142 So.2d 362 (metal strip along floor in apartment house  District Court of Appeal, Third District).